```
             UNITED STATES DISTRICT COURT
                DISTRICT OF MINNESOTA
                Civil No. 05-281(DSD/SRN)
```

Emad Abed as Representative
of the Estate of Yousef
Mahmoud Abed,

      Plaintiff,

v.                                                          **ORDER**

Elliot Wong, City of
Minneapolis, County of
Hennepin, and John Does 1-10,

      Defendants.

      Jamie R. Pierce, Esq. and Mansfield, Tanick & Cohen, 1700 U.S. Bank Plaza South, 220 South Sixth Street, Minneapolis, MN 55402, counsel for plaintiff.

      Charles J. Brown, Jr., Timothy S. Skarda, Minneapolis Assistant City Attorney, 300 Metropolitan Centre, 333 South Seventh Street, Minneapolis, MN 55402, counsel for defendants Wong and City of Minneapolis.

      Roberta C. Jones, Assistant County Attorney, 2000A Government Center, Minneapolis, MN 55487, counsel for defendant Hennepin County.

This matter is before the court upon defendants' motions for summary judgment. Based upon a review of the file, record and proceedings herein, and for the reasons stated, the court grants defendants' motions.

**BACKGROUND**

Plaintiff, Emad Abed, filed this civil rights action against defendants Minneapolis Police Officer Elliot Wong, unidentified Hennepin County Deputies John Does 1-10, City of Minneapolis and Hennepin County.  Plaintiff claims that at some point on February 12, 2003, Wong and John Does 1-10 used unreasonable and excessive force during the arrest and detention of his deceased father, Yousef Mouhmad Abed ("Abed"), and caused his father to suffer a fractured right arm, in violation of 42 U.S.C. § 1983.  Plaintiff asserts claims of vicarious liability against defendants City of Minneapolis and Hennepin County for the conduct of Wong and John Does 1-10, respectively.  Plaintiff also asserts state law claims of battery and negligence against all defendants.

At the time of the incident, Abed was a sixty-nine year old diabetic who had a known history of falling.  (See Jones Aff. Exs. 3-8.)  On February 7 and 8, 2003, Abed received treatment at Hennepin County Medical Center ("HCMC") as a result of injuries that he suffered after a fall from which he was unable to rise. (Id. Ex. 5.)  The HCMC physician who treated Abed on February 8, 2003, indicated that he was weak, he had a contusion on his head and he showed signs of, among other things, pneumonia, hyperglycemia, dehydration and a viral infection.  (Id. Ex. 6.) That physician further noted Abed's history of falls and signs of asymmetric weakness.  (Id.)  A neurologist also evaluated Abed on

February 8 and concluded that the falls were a result of diabetic neuropathy. (Id. Ex. 5.)

On February 12, 2003, an HCMC physician again saw Abed and discharged him, indicating that he was weak and unable to care for himself. (Pierce Aff. Ex. 1.) At some point following his discharge on February 12, Abed went into a restaurant. The restaurant's manager allowed Abed to stay for a period of time but eventually called the Minneapolis Police Department when Abed refused to leave. Wong arrived at the restaurant in response to the manager's complaint and the manager briefly explained the situation to him. (See Wong Dep. at 23-25; see also Pierce Aff. Ex. 2.) According to Wong, Abed appeared to be disoriented and was acting in an irrational manner. (Wong Dep. at 21-22.)

Following his brief conversation with the manager, Wong informed Abed that he would need to leave the restaurant. Abed began to shout that he would not leave and that he was a paying customer. (Id. at 26.) Wong then tried to assist Abed to his feet. However, Abed raised his cane at Wong and ordered him to get away. Wong took the cane from Abed and would not give it back to him due to safety concerns. Wong again told Abed that he would need to leave and offered to physically assist him to the door. Abed refused to move and again ordered Wong to back away.

Eventually, Wong advised Abed that if he did not leave the restaurant Wong would place him under arrest for disorderly conduct

3

and trespassing. Abed persisted in his refusal to leave and lunged out of his chair, towards Wong. At that point, Wong placed Abed on the ground face down, with his arms away from his body. (Id. at 30.) Abed began to physically resist and scream hysterically. Wong handcuffed Abed but waited for two backup officers to arrive before attempting to assist Abed to his feet. Once the backup officers arrived, Wong and the two backup officers physically assisted Abed to his feet and escorted him to Wong's vehicle. (Id. at 34.) Abed refused to get into the vehicle on his own accord. As a result, Wong and the other officers physically placed Abed into the vehicle. Wong transported Abed to the Hennepin County Adult Detention Center ("HCADC").

Once at HCADC, Abed refused to exit the vehicle. Wong requested the assistance of Hennepin County deputies to physically escort Abed out of the vehicle and into the sally port. Three Hennepin County deputies assisted Wong in escorting Abed into the sally port. (See Jones Aff. Ex. 2.) Wong remained at HCADC while the deputies went through an initial, routine check of Abed. (See id.) According to Wong, Abed never made any indication that he was injured or that he was in need of any medical attention. (Wong Dep. at 53-54.)

Hennepin County Detention Deputy Joel Field proceeded to go through a medical screening checklist with Abed while Hennepin County Detention Deputy Ashley Horobin performed a routine pat-down

of Abed.  (Field Dep. at 11, 15-16; see also Jones Aff. Ex. 2.) Field asked Abed all of the questions on HCADC's Medical Screening Form.  (See Pierce Aff. Ex. 5.)  In response to Field's questions, Abed said that he was currently under a doctor's care and that he suffered from heart problems, high blood pressure and diabetes. (Id.)  Abed told Field that he did not need medical attention at that time.  (Id.)  However, Field nonetheless indicated on the form that Abed appeared to be in need of medical attention based upon Field's observation that Abed showed visible signs of difficulty moving and unusual behavior.  (Id.)  According to the Medical Screening Form, Field referred Abed to a nurse, but the form does not indicate that a nurse ever received the referral.  (See id.)

Abed was released from HCADC that evening.  Prior to his release, Hennepin County Detention Sergeant Gloria Bunnell called medical personnel to evaluate Abed because she noticed that Abed was shaking.  (See Pierce Aff. Ex. 9 at ex. K; Bunnell Dep. at 11-12.)  However, Bunnell then personally spoke with Abed about his shaking.  Abed told her that he had suffered from the shaking for an extended period of time and that it was not the result of any of the day's activities or his detention.  (Bunnell Dep. at 11-12.) Following her conversation with Abed, Bunnell requested that Hennepin County Deputy Scott Frazer transport Abed home because she was concerned over his physical condition and ability to get home on his own.  (See Pierce Aff. Ex. 9 at ex. A-2.)  Abed was not seen

by a nurse prior to his release.  According to Bunnell, Abed did not appear to be in pain and he made no indication that he had an injury or was in any need of medical treatment.  (Bunnell Dep. at 14.)

Abed was in a wheelchair when Frazer arrived to transport him, but was able to get himself out of the wheelchair and into the back seat of the van with assistance.  (Frazer Dep. at 15.)  Frazer transported Abed to his apartment building and physically assisted him into the apartment.  Abed did not want to use the HCADC's wheelchair and chose to walk to his apartment with the assistance of his cane.  (Id. at 17.)  According to Deputy Frazer, Abed appeared to be in good spirits.  (Id. at 18.)  Deputy Frazer asked Abed if he needed any help or assistance with his medical needs, such as insulin, and Abed said that he did not.  The only concern that Abed voiced throughout the entire transport was that he had to go to the bathroom and was concerned about not making it to his apartment quickly enough.  (Id. at 24.)  Frazer waited for Abed to lock the apartment door from the inside before he left.  At no point during the transport did Abed complain about his right arm or make any indication that he was in need of medical attention.  (Id. at 16-17.)

Two days later, on February 14, 2003, Abed received treatment for a fractured right humeral head at HCMC.  (See Jones Aff. Exs. 3, 4.)  Although it appears that Abed was inconsistent with his

6

explanation for the source of his injury,[1] according to the medical records the injury resulted when Abed slipped and fell while getting out of bed. (Id. Ex. 3.)  Plaintiff has provided no direct evidence to indicate that the fracture was not the result of a fall.  HCMC personnel contacted social services. A social services agent visited Abed, assessed his condition, spoke with his family members and made arrangements for his short-term care until he could be placed in an assisted living facility at the end of the month.  (Id.)  There is no evidence in the record that Abed informed the social worker who saw him on February 14 that the fracture occurred during either his arrest or detention. (See id.)

Plaintiff filed this lawsuit on August 26, 2004, in his capacity as the court-appointed trustee for the estate of his deceased father.[2]  Plaintiff asserts common law claims of battery and negligence and a § 1983 claim of excessive force against defendants Officer Wong and John Does 1-10.  Plaintiff also asserts

---

[1]  On February 14, a physician's assistant noted that Abed told her that he had fallen at home after he was arrested for stealing a meal from a restaurant.  (Jones Aff. Ex. 3.)  On February 15, a registered nurse noted that Abed told her that he had been recently hospitalized for an injury to his left side when he was assaulted by police officers five days before. (Id. Ex. 7.) On February 16, another HCMC staff member noted that  Abed claimed to have sustained his injury when Minneapolis police officers grabbed him and pushed him into their squad car. (Id.  Ex. 5.) However, that same note goes on to state that Abed's medical records indicate that it was his family who brought him to the ER directly from his home.  (Id.)

[2]  On May 17, 2004, Abed died of an acute myocardial infarction unrelated to this lawsuit. (Jones Aff. Ex. 2.)

claims of vicarious liability and common law negligence against defendants City of Minneapolis and Hennepin County. Defendants now move for summary judgment.

**DISCUSSION**

**I.   Standing**

At oral argument, the court raised the issue of whether plaintiff has standing to file a § 1983 claim on behalf of his deceased father. A plaintiff's standing to sue is an element of the court's Article III jurisdiction and must be determined as a threshold matter. Frey v. City of Herculaneum, 44 F.3d 667, 670 (8th Cir. 1995). Federal law does not govern the extent to which civil rights actions under § 1983 survive the death of a party. Robertson v. Wegmann, 436 U.S. 584, 589 (1978). The survival of a § 1983 claim is determined by looking to the applicable state law that governs survival of actions. See Yellow Horse v. Pennington County, 225 F.3d 923, 926 (8th Cir. 2000); Frey, 44 F.3d at 670-71; Landrum v. Moats, 576 F.2d 1320, 1323 n. 2 (8th Cir. 1978).

In this case, Minnesota law applies and specifies that a cause of action that arises out of an "injury to the person" dies with that person, subject only to specifically defined exceptions. Minn. Stat. § 573.01; Deal v. Northwood Children's Home Soc'y, Inc., 608 N.W.2d 922, 924 (Minn. Ct. App. 2000). One such exception is that a trustee for the estate of a deceased plaintiff

may "maintain an action for special damages arising out of such injury if the decedent might have maintained an action therefore had the decedent lived." Minn. Stat. § 573.02, subd. 2. Accordingly, the Minnesota legislature abates all causes of action that arise out of an injury to the person except those for special damages. Deal, 608 N.W.2d at 925. Special damages are those damages "to which an exact dollar amount can be assigned, such as medical expenses or lost wages to date of death." Tezak v. Bachke, 398 N.W.2d 37, 39 (Minn. Ct. App. 2005). The court finds that all of plaintiff's claims arise out of an alleged personal injury to Abed. See Lipka v. Minn. Sch. Employees Ass'n, 537 N.W.2d 624 (Minn. Ct. App. 1995). Accordingly, under Minnesota law, all causes of action that arise out of a personal injury to Abed abated at the time of his death except to the extent plaintiff seeks to recover special damages. Therefore, plaintiff has standing to file this lawsuit only to recover special damages that may have arisen out of the personal injuries that Abed allegedly suffered.

Pursuant to Federal Rule of Civil Procedure 9(g), a plaintiff must specifically state all items of special damages claimed. In this case, plaintiff has not pleaded special damages with any specificity. Defendants argue that plaintiff's lawsuit is subject to dismissal, with prejudice, for failure to comply with the dictates of Rule 9. The court tends to agree. However, because plaintiff did plead special damages in the complaint, albeit with

9

no particularity, the court will not dismiss this action based on technical non-compliance with the Federal Rules of Civil Procedure. Accordingly, the court will address the merits of the defendants' motions for summary judgment.

## II. Summary Judgment Standard

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." In order for the moving party to prevail, it must demonstrate to the court that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986) (quoting Fed. R. Civ. P. 56(c)). A fact is material only when its resolution affects the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party. See id. at 252.

On a motion for summary judgment, all evidence and inferences are to be viewed in a light most favorable to the non-moving party. See id. at 255. The non-moving party, however, may not rest upon mere denials or allegations in the pleadings, but must set forth

specific facts sufficient to raise a genuine issue for trial. See Celotex, 477 U.S. at 324. Moreover, if a plaintiff cannot support each essential element of his claim, summary judgment must be granted because a complete failure of proof regarding an essential element necessarily renders all other facts immaterial. Id. at 322-23.

**III. Fictitious Defendants, John Does 1-10**

Plaintiff has not amended his complaint to identify defendants John Does 1-10. The court will dismiss unidentified defendants without prejudice "when it appears that the true identity of the defendant cannot be learned through discovery or the court's intervention." Munz v. Parr, 758 F.2d 1254, 1257 (8th Cir. 1985); see also Thornton v. United States Dep't of Justice, 93 F. Supp. 2d 1057, 1063-64 (D. Minn. 2000) (dismissing without prejudice all fictitious defendants upon completion of discovery). Plaintiff argues that he has been unable to identify the deputies that allegedly violated Abed's constitutional rights and failed to obtain necessary medical treatment due to Hennepin County's failure to identify anyone with knowledge of the events of February 12, 2003. The court disagrees. During the discovery process, Hennepin County specifically identified all HCADC personnel who had any communication or interaction with Abed during his in-processing, detention, out-processing and transportation on February 12, 2003. (See Pierce Aff. Ex. 9.) Plaintiff deposed several of the HCADC

11

personnel that Hennepin County identified. (See Pierce Aff. Exs. 4, 6, 7 and 11.) Hennepin County further provided a video tape recording of Abed's in-processing that shows each deputy that interacted with Abed during that time period. (See Jones Aff. Ex. 2.) Despite completion of the discovery process and Hennepin County's thorough responses to all of plaintiff's discovery requests, plaintiff has not identified a single John Doe defendant. Therefore, dismissal of defendants John Does 1-10 is warranted.

**IV.  Section 1983 Excessive Force Claim**

**A.  Defendant Officer Wong**

Officer Wong moves for summary judgment on grounds of qualified immunity. Qualified immunity provides protection from civil liability to government agents who perform discretionary functions, so long as the challenged actions are objectively reasonable in light of clearly established legal principles. See Anderson v. Creighton, 483 U.S. 635, 638 (1987). In evaluating a claim of qualified immunity, the first inquiry is whether the facts alleged show that the officer's conduct violated a constitutional right. Saucier v. Katz, 533 U.S. 194, 201 (2001); Craighead v. Lee, 399 F.3d 954, 961 (8th Cir. 2005). If the court determines that the facts do not establish a violation of a constitutional right, no further inquiry is necessary. Saucier, 533 U.S. at 201.

If the facts do establish a violation of a constitutional right, the second inquiry is whether that right was clearly established at the time of the violation. Id. at 202.

An officer violates the Fourth Amendment when he uses excessive force to effect the apprehension or detention of a free citizen. See Graham v. Connor, 490 U.S. 386, 395 (1989). The force employed is not excessive if it was "objectively reasonable under the particular circumstances." Crumley v. City of St. Paul, 324 F.3d 1003, 1007 (8th Cir. 2003) (internal quotations omitted); see also Saucier, 533 U.S. at 201-02. When evaluating an officer's use of force, the court pays careful attention to the particular facts and circumstances of the case, including the nature of the crime, whether the suspect posed an immediate threat to the safety of the officer or others and whether the suspect actively resisted arrest. Graham, 490 U.S. at 396. The court judges the reasonableness of a particular use of force from the perspective of a reasonable officer on the scene and not with the 20/20 vision of hindsight. Id. (citing Terry v. Ohio, 392 U.S. 1, 20-22 (1968)). "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments – in circumstances that are tense, uncertain, and rapidly evolving – about the amount of force that is necessary in a particular situation." Id. at 396-97.

Here, plaintiff claims that Wong used unreasonable and excessive force while handling Abed and that Abed incurred a fracture to his right arm as a result of the amount of force used. However, the record is devoid of any evidence to support plaintiff's claim. Every person who handled Abed during his arrest and subsequent detention that has provided deposition testimony in this matter has testified that Abed made no indication that his right arm was injured on February 12. The deposition testimony consistently stated that Abed did not complain of an injury or request medical treatment during his arrest, short-term detention or transport home. Having thoroughly reviewed the record, including the videotape of Abed's intake, the court finds no evidence to support plaintiff's theory that Abed incurred the fracture on February 12.

Furthermore, the court finds nothing excessive in the amount of force Wong used in arresting Abed and transporting him to the HCADC. Wong took Abed's cane away only after Abed raised the cane at Wong and ordered him to get away. Wong attempted to escort Abed out of the restaurant and Abed consistently refused. Wong did not handcuff Abed until after Abed lunged towards Wong.[3] Once Abed lurched out of his chair, he ended up on his knees on his own accord. It was then that Wong forced Abed all the way to the

---

[3] The record is unclear as to whether Abed lunged towards Wong or towards his cane.

ground in order to handcuff him.  Having considered the totality of the circumstances that Wong was presented with, including the degree of Abed's lack of cooperation, the court finds that Wong used an objectively reasonable amount of force.  Accordingly, the court finds that plaintiff has not established a prima facie claim of a violation of Abed's Fourth Amendment rights.  Therefore, summary judgment in favor of defendant on plaintiff's § 1983 excessive force claim is warranted.

Even if plaintiff had established that Wong violated Abed's constitutional rights, summary judgment would still be warranted on the grounds of qualified immunity.  The doctrine of qualified immunity is applied in a manner that "'gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law.'"  Walker v. City of Pine Bluff, 414 F.3d 989, 992 (8th Cir. 2005) (quoting Hunter v. Bryant, 502 U.S. 224, 229 (1991)).  The dispositive inquiry is "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted."  Saucier, 533 U.S. at 202.  For the reasons already expressed, the court finds that it would not have been clear to an objectively reasonable officer that handcuffing a man who was acting irrationally and physically resisting arrest, in the manner that Wong did, was unlawful. Therefore, summary judgment would also be warranted on the grounds of qualified immunity.

**B.     Defendants City of Minneapolis and Hennepin County**

Plaintiff argues that defendants Hennepin County and City of Minneapolis are vicariously liable for the acts of the unidentified defendants, John Does 1-10, and Officer Wong, respectively. However, a municipality cannot be held liable under § 1983 unless a municipal employee is found liable on an underlying substantive constitutional claim. Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691 (1978); Abbott v. City of Crocker, 30 F.3d 994, 998 (8th Cir. 1994). Defendant has not identified a single Hennepin County deputy that violated Abed's constitutional rights, and the court has found that Officer Wong did not violate Abed's constitutional rights. Accordingly, no basis exists to impose vicarious liability on either municipal defendant. Therefore, summary judgment is warranted on plaintiff's claims of vicarious liability under 42 U.S.C. § 1983.

Furthermore, even if plaintiff had established that a municipal employee of either defendant committed a constitutional violation, plaintiff has not established a prima facie case of municipal liability under § 1983. Municipalities are not vicariously liable under 42 U.S.C. § 1983 for an employee's unconstitutional acts. Wedemeier v. City of Ballwin, 931 F.2d 24, 26 (8th Cir. 1991) (citing Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691 (1978)). Rather, municipal liability exists only if a plaintiff can establish that either a municipal policy or custom is

the moving force behind the constitutional violation.  Id.  A plaintiff must establish that a municipal policy or custom is implemented to such a degree so as to amount to "deliberate indifference" of constitutional rights.  Lund v. Hennepin County, 427 F.3d 1123, 1125 (8th Cir. 2005) (citing City of Canton v. Harris, 489 U.S. 378, 388-91 (1989)).  A plaintiff must further establish an affirmative link between the policy challenged and the particular constitutional violation.  City of Oklahoma v. Tuttle, 471 U.S. 808, 824 n. 8 (1985).

Similarly, a municipality's inadequate training of employees can only serve as the basis of § 1983 liability when a plaintiff shows that "the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." City of Canton, 489 U.S. at 388-89.  To establish deliberate indifference, a plaintiff must prove that the municipality "'had notice that its procedures were inadequate and likely to result in a violation of constitutional rights.'"  Jennings v. Wentzville R-IV Sch. Dist., 397 F.3d 1118, 1122 (8th Cir. 2005) (quoting Larson v. Miller, 76 F.3d 1446, 1454 (8th Cir. 1996) (en banc)).  The court infers that a municipality was on notice if the failure to train was so likely to result in a constitutional violation that the need for training was "patently obvious" or if a pattern of misconduct exists to indicate that a municipality is regularly responding in an insufficient manner to a recurring situation.  Id.

17

In this case, plaintiff has not identified any express policies of Hennepin County or the City of Minneapolis that could be the basis of vicarious liability. Rather, plaintiff argues that the defendants failed to properly train city and county employees on how to handle vulnerable adults. To support this argument, plaintiff points only to the lack of a formal policy. Plaintiff has provided no direct evidence to indicate that either defendant was on notice that their procedures were inadequate. Furthermore, nothing in the records supports an inference that either defendant was on such notice. Accordingly, plaintiff has not established that either defendant's lack of a formal policy is a result of deliberate indifference of constitutional rights. Therefore, summary judgment would be warranted on plaintiff's claims of vicarious § 1983 liability even if Officer Wong or John Does 1-10 were found to have violated Abed's Fourth Amendment right.

## V.   State Law Claims

Plaintiff has also pleaded Minnesota common law claims of battery against Officer Wong and John Does 1-10 and claims of negligence against all defendants. A district court has discretion whether to exercise supplemental jurisdiction over state law claims joined in a civil action after all claims over which it has original jurisdiction have been dismissed. 28 U.S.C. § 1367(c)(3); see also Franklin v. Zain, 152 F.3d 783, 786 (8th Cir. 1998); Townsend v. Am. Express Fin. Corp., 2004 WL 45501, at *7 (D. Minn.

Jan. 5, 2004); Save Our Health Org. v. Recomp of Minn., Inc., 829 F. Supp. 288, 293 (D. Minn. 1993), aff'd, 37 F.3d 1334 (8th Cir. 1994). The court has determined that defendants are entitled to summary judgment on all claims within its original jurisdiction. The court declines to exercise supplemental jurisdiction over plaintiff's remaining state law claims.

## CONCLUSION

Accordingly, **IT IS HEREBY ORDERED** that:

1. All counts against defendants John Does 1-10 are dismissed without prejudice.

2. Defendant Hennepin County's motion for summary judgment [Docket No. 28] is granted.

3. Defendant City of Minneapolis's motion for summary judgment [Docket No. 36] is granted.

4. Defendant Elliot Wong's motion for summary judgment [Docket No. 36] is granted.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: April 24, 2006

                                            s/David S. Doty
                                            David S. Doty, Judge
                                            United States District Court